ALEXANDER DENNISTOUN, JOHN DENNISTOUN, WILLIAM MYLINE, AND WILLIAM WOOD, PARTNERS, UNDER THE STYLE OF A. DENNISTOUN AND CO., PLAINTIFFS, v. ROGER STEWART.

Where questions are certified up to this court, in consequence of a division in opinion between the judges of the circuit court, they must be questions of law and not questions of fact; not such as involve or imply conclusions or judgment by the judges, upon the weight or effect of testimony or facts, adduced in the cause.

The questions must also be distinctly and particularly stated with reference to that part of the case upon which such questions shall have arisen.

The points stated must be single, and must not bring up the whole case for decision.

THIS case came up from the circuit court of the United States for the southern district of Alabama, upon a certificate of division in opinion between the judges thereof.

The case was before the court at the preceding term, and is reported in 17 How. 606.

The certificate of division commenced as follows, namely:—

### Certificate of Division of Opinion.

CIRCUIT COURT OF THE U. S.,
Southern Dist. of Ala.

A. DENNISTOUN AND CO.
v.
JAMES REID AND CO.

Upon the trial of this cause in the circuit court aforesaid, the defendant, among other defences to the case of the plaintiffs, insisted that the plaintiffs had surrendered, to one Byrne, a bill of lading for ten hundred and fifty-eight bales of cotton on The

Windsor Castle, whereby the said Byrne was enabled to dispose of the said cotton, and apply the proceeds otherwise than for the payment of the bill upon which this suit was brought, against the rights and interests of the said defendant, whereby he was injured to the whole amount of the bill. And upon the point of this defence the depositions of Joseph Bramwell, Robert Barrett, Robert Winthrop, A. E. Byrne, Orlando Jones, Andrew Stewart, Charles Livingston, Moses Joynson, T. D. Anderson, and Wm. Moreland, which are hereunto attached, were read to the jury, and formed the testimony relied on by the parties in reference to such defence. And upon the instructions proper to be given to the jury upon the said defence, the following questions arose, and upon which the members of the court were opposed and divided in opinion:—

(Then followed the questions as they are stated in the opinion of the court.)

The case was argued by *Mr. Phillips*, for the plaintiffs, and submitted on a printed argument by *Mr. Stewart*, for himself.

Mr. Justice DANIEL delivered the opinion of the court.

This cause comes before us upon a certificate of division in opinion between the judges of the circuit court of the United States for the 5th circuit and southern district of Alabama.

The evidence before the circuit court on which the division in opinion arose was of the following character:—

The defendant, on the 9th day of September, 1850, at Mobile, in the names of James Reid and Co., of which firm the defendant was a member, drew a bill on Henry Goa Booth, at Liverpool, for the sum of forty-four hundred and seventeen pounds fourteen shillings and eleven pence sterling, payable at sixty days sight, to the order of the drawers in London, on account of 1,058 bales of cotton, shipped by the drawers to the drawee by the ship Windsor Castle.

This bill was indorsed by the defendant, by the name and style of his firm, to the plaintiffs, and, after acceptance, having been returned protested for non-payment, an action of *assumpsit* was brought for the amount of the bill and charges by the indorsees against the defendant as drawer.

Upon the trial before the circuit court there were introduced and read the testimony of sundry witnesses, examined on the part both of the plaintiffs and the defendant.

The object of the plaintiffs was to sustain their right of recovery upon the bill, by showing that this right had not been lost or impaired by any irregularity or delinquency of the plaintiffs as indorsees and holders of the bill for value.

By the evidence adduced by the defendant it was designed to show that, previously to the purchase of the 1,058 bales of cotton, and as a part of the agreement on which the purchase was to be made, the defendant, or the person or persons by whom the funds for that purchase should be advanced, should hold the bill of lading of the cargo as security for such advances; that this agreement was adopted by the plaintiffs, who required and received the bill of lading as a precedent condition to their purchase of the bills drawn on Booth by the defendant; that the bill of lading thus received as a security, was transmitted by the plaintiffs to a branch of their firm in Liverpool, and by the Liverpool branch, with the knowledge and in violation of that ageement, was surrendered to one Byrne, a creditor of Boothe, and thus diverted from the purposes it was intended to secure.

Upon the instructions prayed from the court to the jury, the court were divided in opinion upon the following questions:—

1. Whether the firm of Dennistoun, Wood, and Co., of New York, or the plaintiffs, were bound to hold the said bill of lading for the shipment on the said Windsor Castle as a security for the bill of exchange described in the declaration, and whether any amount of loss arising to the said defendant from their failure to hold the said bill for the purpose of securing the proceeds of the cotton specified therein, for the payment of the bill of exchange described in the declaration, can be used as a defence against the bill, or any part thereof.

2. Whether the said Dennistoun and Co. were required to hold the said bill of lading as a security for any bill of exchange drawn by the defendant or his agents upon the said shipment of cotton, other than those to which the same was attached, or of which they, the said plaintiffs, had specific and direct notice at the time of the settlement with Byrne in the manner stated in the depositions; and whether notice to Dennistoun, Wood, and Co., in New York, was operative as a notice to the plaintiffs in Liverpool, though no notice was received by the house in Liverpool of such outstanding bill before said settlement.

3. Whether, if the plaintiffs surrendered the said bill of lading to the said Byrne, under a promise from him that the proceeds of the cotton should be applied to the payment of bills that might come forward, and that this bill should subsequently come forward; and that the plaintiffs have failed to sue said Byrne, or to take any other legal proceeding against him, and that the said Byrne has the proceeds of the cotton more than sufficient to pay the bill, these facts or any other facts in connection therewith that are contained in the said testimony, offer any defence against the case of the plaintiffs.

4. Whether any view of the evidence introduced upon the said trial and hereto attached, would warrant the jury in finding for the defendant, upon this point of the defence to the case of the plaintiffs.

5. And the further question arose, whether the statute of Alabama regulating the damages upon bills of exchange like the present, returned under protest, regulates the rate of damage in this case.

We think that our jurisdiction of the questions certified on the record of this cause, is forbidden by previous decisions of this court, bearing upon those questions considered separately, as well as upon the case as presented by them in an aggregate point of view.

In the interpretations by this court of the act of congress of April 29, 1802, authorizing divisions of opinion at circuit to be certified, the following requisites have been prescribed as indispensable to the jurisdiction of this court over questions upon which the judges shall have been opposed in opinion.

1. They must be questions of law and not questions of fact —not such as involve or imply conclusions or judgment by the judges upon the weight or effect of testimony or facts adduced in the cause. *Vide* Wilson *v.* Barnum, 8 How. 258. And the question or questions upon which the judges were opposed in opinion must be distinctly and particularly stated with reference to that part of the case upon which such question or questions shall have arisen. *Vide* The United States *v.* Briggs, 5 How. 208. It is said by the chief justice in delivering the opinion of the court in this case, "we are not authorized to decide in such cases unless the particular point upon which the judges differed is stated;" again he says: "the difference of opinion is indeed stated to have been on the point whether the demurrer should be sustained. But such a question can hardly be called a point in the case within the meaning of the act of congress, for it does not show whether the difficulty arose upon the construction of the act of congress on which the indictment was founded, or upon the form of proceeding adopted to inflict the punishment, or upon any supposed defect in the counts in the indictment. On the contrary, the whole case is ordered to be certified upon the indictment, demurrer, and joinder, leaving this court to look into the record to determine for itself, whether any sufficient objection can be made in bar of the prosecution.

2. The points stated must be single, and must not bring up the whole case for decision.

In the establishment of this position, the rulings of this court have been reiterated, and most explicit.

Beginning with the case of the United States *v.* John Bailey,

9 Pet. 257, it is in that case declared by the late chief justice, that ." the language of the 6th section of the act to amend the judicial system of the United States, shows conclusively, that congress intended to provide for a division of opinion on single points which frequently occur in the trial of a cause; not to enable a circuit court to transfer an entire cause into this court before a final judgment; a construction which would authorize such a transfer would counteract the policy which forbids writs of error or appeals until the judgment or decree be final." To the same effect, and enunciated in language equally if not even more explicit, will be found the decisions of Adams and Co. *v.* Jones, 12 Pet. 207; of White *v.* Turk et al. Ib. 238; of Nesmith *v.* Sheldon et al. 6 How. 41; of Webster *v.* Cooper, 10 Ib. 54.

Upon the trial in the circuit court the examination of witnesses was introduced and relied on both by plaintiffs and defendant to show the nature of the agreement upon which the cargo of The Windsor Castle was purchased, and upon which the plaintiffs consented to purchase and did purchase the bills drawn by the defendant upon Booth; the character of the security proffered and said to have been accepted in the bill of lading for the indemnity of the plaintiffs in purchasing the bills drawn upon Booth, and the obligation of the same plaintiffs not to surrender that security, nor to use it to the detriment of the defendant. The case was not placed before the judges upon any general or settled principle of the law-merchant, nor was their opposition in opinion founded upon a case moulded and governed simply by that law, but they have divided upon a case which was or might have been affected by facts heard in evidence, the influence of which facts, as controlling the acts and obligations of the parties, fell peculiarly and properly within the province of the jury.

Again, we do not think that the certificate of the judges of the circuit court conforms to the settled interpretation of the act of congress as expounded by the cases cited, in presenting to this court any single or specific question of law arising in the progress of the cause, but that it refers to this court the entire law of the case as it might arise upon all the facts supposed by the court, and which have not been found by the jury. We are therefore of the opinion that this court cannot take jurisdiction of this case as certified from the circuit court, but that it should be remanded to that court to be proceeded in according to law.