WATSON, ASSIGNEE, *v.* TAYLOR,

In which the doctrines of the preceding case are affirmed and applied to the case of a note with warrant to confess judgment, given five months before the petition of bankruptcy was filed against the debtor; the case showing affirmatively that no fraud was intended when the note with warrant was given, and that the creditor had no reason to believe that the debtor was insolvent.

ON certificate of division in opinion from the Circuit Court for the Western District of Pennsylvania. The case was thus:

Taylor, prior to the 4th of August, 1868, was, and at the time of this suit still continued to be, a wholesale drygoods merchant, in Pittsburg, Pennsylvania.

Sweeney, prior to the same day, was, and until January 13th, 1869, continued to be, a retail merchant, residing and

---

* 18 Wallace, 332.          † Ib. 375.

doing business in Freeport, Pennsylvania. For some time prior to the said 4th of August, 1868, and up to January 1st, 1869, Sweeney was a customer of Taylor in the purchasing of merchandise on credit, according to the usual course of the business.

On the 4th of August, 1868, Sweeney was in debt to Taylor in an account then due, for merchandise previously purchased in the ordinary course of business; and on that day, according to the custom of said Taylor, and in the ordinary course of business, closed the account by executing and delivering to Taylor a note, with warrant of attorney, for $800, the balance of the account, embracing the amount of a small bill of goods, about $13, that day sold said Sweeney, payable four months after date, with interest. After this Sweeney continued to purchase from Taylor merchandise as before, all of which had now been paid for, but he paid nothing on the note.

It was the regular custom of Taylor to close such accounts by taking notes with warrant of attorney.

The note remained unpaid, and on the 1st of January, 1869, was, by an agent of Taylor, delivered to Taylor's attorneys for collection (he having demanded payment a day or two before), and was by them entered of record and judgment confessed by virtue of the warrant of attorney, and on the same day a writ of *fieri facias* was issued thereon and delivered to the sheriff, which became a lien under the laws of Pennsylvania upon the goods and chattels of Sweeney, and upon the 4th day of January, 1869, an actual levy was made in pursuance of said writ upon the personal estate of Sweeney, consisting of drygoods, groceries, &c., in his store at Freeport, being all he had, the store being closed and sold out on the execution (he having no real estate), and, in accordance with said law, the goods and chattels were sold by the sheriff on the 13th day of January, 1869, and on the 18th of January, 1869, the sum of $860 paid over by the sheriff to Taylor's attorneys, who paid it to him, Taylor. Neither Taylor nor his counsel became the purchasers of any property thus sold by the sheriff.

It appeared from the evidence that at the time of taking the note and confessing judgment thereon there was no fraud or collusion intended by either Taylor or Sweeney, and Taylor testified that he did not know or have any reasonable cause to believe that Sweeney was bankrupt or insolvent, or contemplated bankruptcy or insolvency, or any fraud on the Bankrupt law.

On the 15th of January, 1869, two days after the sale, a petition in bankruptcy was filed in the United States District Court, at Pittsburg, against Sweeney, by Hanlon and others, his creditors, and on the same day an injunction was awarded, which was never served personally on Taylor, or in any manner upon his attorneys, but was served on the sheriff on the 18th January, 1869, after the money had been paid over. There was no evidence given to show that at the time of receiving the money, either Taylor, his attorney, or the sheriff had any notice of said writ of injunction or proceedings in bankruptcy.

On the 2d of February, 1869, Sweeney was adjudged bankrupt, in default of appearance to the rule to show cause, and on the 30th day of March, 1869, Watson was chosen his assignee, to whom an assignment was duly made by the register.

Watson, the assignee, now brought *assumpsit* in the court below, to recover the value of the personal property sold under the confession of judgment; and on the trial these questions occurred and were certified to this court:

1. Whether the confession of judgment, execution, levy, and sale, as proved, constituted an indirect transfer of the property with a view to give a preference, within the meaning of the thirty-fifth section of the Bankrupt Act.

2. Whether the confession of judgment, execution, levy, and sale aforesaid, constituted a transfer or other disposition of the property, with a view to give a preference.

3. Whether, if the facts aforesaid constituted a transfer or other disposition within the meaning of the Bankrupt Act, it was made at the date of the warrant of attorney, or at or after the time of confessing the judgment.

4. Whether, from the debtor's default in payment of the debt, the warrant of attorney, the confession of judgment, execution, and levy, as aforesaid, the execution creditor had reasonable cause to believe that the debtor was insolvent, and that the proceedings were in fraud of the Bankrupt Act.

5. Whether the entry of judgment in the State court and the proceedings therein, as aforesaid, constitute a bar to the present suit.

*No counsel for Watson, the assignee; Messrs. E. S. Golden and G. W. Guthrie, for the creditor, Taylor.*

Mr. Justice STRONG delivered the opinion of the court.

In this case the proceedings in bankruptcy were commenced on the 15th of January, 1869. On the 4th of August, 1868, more than five months before the petition was filed, the bankrupt gave to the defendant his promissory note containing a warrant to confess a judgment thereon. By virtue of the warrant a judgment was entered on the 1st day of January, 1869, and the execution, levy, and sale immediately followed. Were there nothing more in the case, what we have just decided in *Clark* v. *Iselin* would determine that no preference within the meaning of the Bankrupt Act was given. The case, however, shows affirmatively that no fraud or collusion was intended, either at the time when the note was given or when the judgment was entered, and that the creditor had no reason to believe the debtor was insolvent.

The first, second, and fourth questions are, therefore, answered in the negative, and, being thus answered, the other questions become immaterial.

Mr. Justice HUNT (with whom concurred Justices CLIFFORD and MILLER) dissenting, in this case of *Watson, Assignee,* v. *Taylor,* as in the preceding one of *Clark, Assignee,* v. *Iselin :*

The importance of the principle involved in the decision

of these cases justifies a statement of the position of those who do not concur in the decision.

Stated in brief words the decision is this: A merchant in solvent circumstances may give his creditor a warrant to confess a judgment, which may be held by him, concealed from the knowledge of every other person; the debtor may continue his business for an indefinite time, buying other goods of the same creditor, paying for the new purchases, but paying nothing on the judgment debt, and when he becomes insolvent, judgment may be perfected on the warrant of attorney so given, execution issued, and the proceeds of the property sold paid to the judgment creditor in preference to and in exclusion, if need be, of all other creditors.

In the case of Iselin the warrant of attorney was held by him unacted upon for two months, and in the case of Taylor for five months. The precise time is not important. If the power to enter the judgment may remain unexercised for five months, and be enforced after insolvency has occurred, there is no limit to the time, except such as may arise from the statute of limitations. In the case of Iselin the confession was given to secure a debt then created. In the case of Taylor it was given to secure an antecedent debt. The decision, therefore, embraces as well the case of a debt past due at the time of giving the confession as of a debt then created.

1st. This decision impresses me as being in violation of the whole spirit and intent of the Bankrupt law, and as calculated to destroy its beneficial effect.

The first principle of this law is to secure an equal distribution of the property of a bankrupt among all his creditors. Its first intent was to destroy the system of preferences allowed in most of the States, by which in the act of bankruptcy, as it were "*in articulo mortis*," a debtor could give all his property to favored creditors. It was intended to prevent this vicious system and, in the language of the act, "to secure the rights of all parties and the due distribution of assets among all the creditors, without any priority or preference whatever, except wages not exceeding $50." To this end the whole machinery of the act is directed. To accom-

plish this end all attachments made within four months of the bankrupt proceedings are annulled, however vigilant the creditor, however honest his debt; all offsets in favor of debtors of the bankrupt purchased after bankruptcy, are disallowed; no discharge is to be granted to the bankrupt if within four months he has procured his property to be attached or seized on execution, or if in contemplation of bankruptcy he has made any conveyance, pledge, or transfer, directly or indirectly, absolutely or conditionally, for the purpose of preferring one creditor over another. With the same view it is further provided that payments within six months, or, in certain cases, within four months, with a view to giving a preference, or if he procures his property to be attached, or makes pledges, assignments, or transfers, where the person receiving them has reason to believe there is insolvency, and that it is in fraud of this act, all these acts are void, and the creditor may be compelled to refund to the assignee the money received by him; and if the transaction is not in the usual course of business, the fact shall be *primâ facie* evidence of fraud.

How can the spirit of this act be carried out if the debtor is allowed to give a secret preference to one creditor, by which his debt is free from the hazards of trade, and is secure whatever may happen? The favored creditor lends his debtor other moneys from day to day. He sells him other goods as his occasions require. Other creditors buy, sell, get credit, all is fair to the view, all stand upon an apparent equality. Each one supposes that he understands that no preference can by law be given, but that by law all will share alike in the event of a calamity. A calamity does occur, and through a concealed instrument, not possible to be known to others, by which the favored creditor has had the power to precipitate the crisis whenever his interests required it, and to delay it until that time came. The judgment by confession for a debt long since mature is now entered of record, execution is issued, and his debt is paid in preference of or to the exclusion of all others. A Bankrupt Act which permits such a result cannot be said to be

based upon the principle of an equal distribution of all the assets among all the creditors.

If the creditor had desired to bring his debt within the protection of the law, and to make it like a mortgage, a lien upon the real estate of the debtor, he should have entered it of record in the clerk's office. Until so entered, while kept in his safe or his pocket, it is not a mortgage, or judgment, or lien, of any character. He simply has the means or the power of giving himself a lien upon land by filing his judgment, or upon goods by issuing execution. Of itself, unexecuted, the confession has no force or virtue.

But, secondly, I am of the opinion that the proceeding in question is forbidden by the terms of the thirty-fifth section of the Bankrupt law.* It is there enacted that if any person, being insolvent, within four months before the bankruptcy proceedings, with a view to give a preference to any creditor, "procures any part of his property to be seized on execution," the same shall be void and the assignee may recover the value of the same.

Every person is deemed to contemplate the natural result of his acts, and is responsible for all the results that legitimately follow them. A debtor who confesses a judgment cannot be heard to say that he did not contemplate the issuing of an execution thereon. A judgment is given that execution may follow thereon. An execution is the only mode by which the benefit of the judgment can be obtained. This principle is so plain that we could hardly expect to find a decision supporting it. It so happens, however, that the precise proposition was involved in the case of the *Clarion Bank* v. *Jones,* assignee, recently decided by this court.†

Whoever, therefore, procures judgment to be entered against himself, upon which execution is issued and levied, procures his goods to be seized on execution within the provision of the statute. In the case just cited Mr. Justice Clifford uses the following language:

"1. That every one is presumed to intend that which is

---

* See the section quoted, *supra*, 361.—REP.          † *Supra*, 337.

the necessary and unavoidable consequence of his acts, and that the evidence introduced that the debtor signed and delivered to the defendants the judgment note payable one day after date, giving to them the right to enter the same of record and to issue execution thereon without delay, for a debt which was not then due, affords a strong ground to presume that the debtor intended to give the creditor a preference, and that the creditor intended to obtain it, and that it is wholly immaterial whether the preference was voluntary or was given at the urgent solicitation of the creditor."

On the 25th of February, 1869, Dibblee gave to Mr. Iselin what is termed in the State of New York a confession of judgment for $54,000. . The paper contained an acknowledgment of indebtedness to that amount. It carried an authority to enter judgment for that sum in the Supreme Court of the State of New York. Until so entered it had no force or effect in any degree or in any form. It created no lien on lands until so entered. It could give no lien on goods until so entered and an execution issued in the ordinary form of law. It was not a mortgage or judgment. It created no lien or incumbrance. It may be compared to an agreement to give a mortgage under certain circumstances. Such an agreement might be made of value, but it is nothing of itself.*

Dibblee gave a power or authority simply, by which the creditor was authorized to give to himself a judgment and execution. This is conceded in general terms. It is sought to annul its effect, however, by reference to the fact that when the confession was executed, or the authority given, Dibblee was solvent and might lawfully confess a judgment. If this be conceded, it does not aid the argument. If he had entered up the judgment on the 25th of February, by virtue of an authority then given, it might have been valid, but he did not exercise the authority until the 30th of April. At that time Dibblee was insolvent, to the knowledge of Iselin. The authority given on the 25th of February was a

---

* Bank of Leavenworth v. Hunt, 11 Wallace, 391.

continuing authority. It was not in its effect an act then and there done and ended, and of which the force was then and there exhausted. It was not an act then and there perfected, like a mortgage or deed. The paper given was nothing of itself, but it gave to the creditor power and authority to create a judgment. This authority was not exhausted on the 25th of February, when the paper was executed. It continued every day to be a subsisting power, and every moment of the day. On the 30th of April, 1869, it was a power and authority then subsisting and in force. The judgment entered in the clerk's office on that day, was entered by force of a power of attorney in the exercise of authority given by Dibblee, and that day existing in full force. The cases of *Bennett* v. *Davis*,* and *Nichols* v. *Chapman*,† show that if Dibblee had died at any time before the judgment had been actually entered up, the judgment could not have been perfected. His death would work a revocation of the authority. From this we conclude, 1, that the paper was of itself no lien or security; 2, that it was merely a power of attorney, which, like every other power of attorney, is revoked by the death of the grantor. While the debtor lived, and in this case on the 30th of April, the authority to enter judgment on that day continued, and on that day the power and authority were carried into execution. On that day, however, the debtor was a bankrupt.

These suggestions are equally applicable in the case of Taylor.

No case has been cited which gives the authority of this court to the principle held by the majority of the court in the present case. The case of *Buckingham* v. *McLean*,‡ not cited, is the only one I have been able to find giving apparent countenance to it. The language of Mr. Justice Curtis in that case is broad enough to cover it. The case there under consideration did not require or justify the examination of the question now before us. The question was whether the fact of the debtor's insolvency should refer to

---

* 3 Cowen, 68.    † 9 Wendell, 452.    ‡ 13 Howard, 150.

the time when the confession was given and was entered of record, or when the execution was issued, and it was held that the first named was the time to be inquired about. The execution was issued on the 22d of April. The confession was signed on the 7th of May, and entered of record on the next day, and the twenty-four hours had made no change in the debtor's affairs. He was solvent on both of those days. On the 22d of April he was insolvent. The distinction, so important in the present case, between the condition of affairs when the judgment was authorized and the condition months later, when the judgment was entered of record, did not and could not arise.

Except for the judgment of a majority of my brethren to the contrary, I should say that it was plain, 1st, that the judgment was entered by virtue of an authority from the debtor when he was insolvent to the knowledge of the creditor; and, 2d, that this was a procuring by the debtor of the seizure of his property on execution, which cannot be sustained under the Bankrupt law.

Great as is my deference to the opinions of my associates, I am not able in this case to yield my judgment.