## JEWELL v. KNIGHT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF INDIANA.

Argued November 3, 4, 1887. — Decided December 5, 1887.

Questions certified to this court upon a division of opinion of two judges
in the Circuit Court must be distinct points of law, clearly stated, so that
they can be definitely answered, without regard to other issues of law or
of fact; and not questions of fact, or of mixed law and fact, involving
inferences of fact from particular facts stated in the certificate; nor yet
the whole case, even if divided into several points.

Whether a sale and delivery of a debtor's stock of goods, by way of pref-
erence of a bona fide creditor, is fraudulent against other creditors,
involves a question of fact, depending upon all the circumstances, and
cannot be referred to this court by certificate of division of opinion.

BILL IN EQUITY by general creditors of John Knight against
him, his wife, Stoughton A. Fletcher and Francis M. Church-
man. After a hearing upon pleadings and proofs before the
Circuit Judge and the District Judge, the bill was dismissed,
and they signed the following certificate of division of opinion:

" The defendant John Knight was a merchant engaged in
the railway-supply business at Indianapolis. He had been
engaged in such business for several years prior to May 3,
1879. The defendants Fletcher & Churchman were his bank-
ers, and the defendant Eliza J. Knight is his wife.

" The complainants are Eastern manufacturers or merchants,
residing at Hartford, Connecticut, and Pittsburgh, and have
sold goods to Knight for which they have never been paid.

" In December, 1878, Knight borrowed from his wife $10,-
000, which she raised by mortgaging her separate real estate.
He gave her a note at the time of the loan, evidencing the
indebtedness. There is no evidence impeaching the bona fides
of this transaction between Knight and his wife. The money
so raised was used by Knight in his business.

" Knight was also indebted to Fletcher & Churchman, in the
sum of $10,000, which indebtedness was evidenced by various
promissory notes, of which a note for $4000 matured March

6, 1879, and other notes for $6000 matured at different dates up to April 18, 1879.

"Afterwards, on March 1, 1879, a note due one day after date was given by Knight to Fletcher & Churchman as collateral security for the other notes. The object of giving this note was to put it in the power of Fletcher & Churchman to sue and obtain judgment at any time they desired.

"Besides these, Knight owed mercantile debts to manufacturers and dealers living in other cities to a considerable amount, to wit, about $12,000. He was also indebted to George P. Bissell, trustee, for borrowed money to the amount of $45,867.85, which was secured by a mortgage upon real estate, and default had been made in payment of interest on this mortgage debt, but of this debt Knight was personally bound for the payment of $28,770.90 only. Knight and Churchman then supposed that Knight was personally liable for the whole debt.

"Foreclosure proceedings had been commenced by Bissell in January, 1879, and Knight, about that time, had some negotiations with Bissell, the object of which was to induce him to agree to take the mortgaged property in full satisfaction of the mortgage debt, and exonerate Knight's personal estate. Bissell refused, and pressed his suit with the purpose, as he informed Knight, of taking personal judgment against Knight, collecting what he could by levy and sale of his personal property, and enforcing his mortgage lien for the balance.

"Fletcher & Churchman were apprised of Bissell's suit, and of his purpose to take personal judgment against Knight and levy upon his personal property, and they were also apprised of Knight's efforts to settle with Bissell, and informed Knight that if those efforts were fruitless they would protect themselves, and requested Knight to execute for them a cognovit upon which they could take judgment at any time they saw fit. Mrs. Knight insisted that she should be put on an equal footing with Fletcher & Churchman, and it was finally agreed that the cognovit should include her debt also, and it was so made and executed on March 17, 1879, and delivered into Churchman's custody to take judgment when he saw fit. By

this arrangement it was in the power of Fletcher & Churchman and Mrs. Knight at any time to take judgment; it was left wholly to them to determine when judgment should be taken, though Knight begged them to postpone as long as they could, saying he still had hopes of settling with Bissell. Fletcher & Churchman did. not agree to delay, but it was understood between them and Knight that unless it became necessary for their protection against Bissell or any other person (there being, however, no expectation of suit by any other person, nor that there would be any necessity for the use of the cognovit-if Bissell could be persuaded to take the property covered by his mortgage in satisfaction of his demand), they would not take judgment until Knight could see Bissell again; and accordingly they did wait until May 1, 1879, before they took any steps to put their claim in judgment. Knight did not see or communicate with Bissell until April 28, 1879, when, as Knight had expected, Bissell came out to Indianapolis. Knight then saw him, and again requested Bissell to take the mortgaged property for the debt, but Bissell refused to do so, and Knight made no further effort to induce him to make that arrangement. Meanwhile, from the date of the cognovit to May 1, a period of six weeks, Knight held himself out as a solvent merchant worthy of credit, and, with the knowledge of the other defendants, went on with his business as usual, buying and selling goods.

"His standing as a business man was good, and he could buy goods on credit for any reasonable amount during that time, and did buy to replenish his stock as he had been in the habit of doing; during which time his purchases amounted to $4113.94, and his sales amounted to $5249.64.

"Knight had been dealing with the complainants, Spang, Chalfant & Co., during a period of four years, and with the complainants, Pliny Jewell & Sons, for eighteen months prior to May 1, 1879. The goods for which he owed Jewell & Sons were purchased as follows: February 19, 1879, $379.36; April 22, 1879, $45.57; for which February purchase, on April 14, 1879, he gave them his acceptance, payable July 2, 1879. The goods for which he owed Spang, Chalfant & Co. were pur-

chased as follows: December 17, 1878, $75.94; April 7, 1879, $849.80, on 90 days' credit. No part of either debt was paid.

"On or about May 1, 1879, Churchman, of Fletcher & Churchman, heard that Bissell was pressing his suit to judgment, and he therefore requested Ayres, the attorney named in the cognovit, to proceed at once to take judgment, and judgment was entered upon the cognovit in the Superior Court of Marion County May 1, 1879, for $20,352.22, the amount due Fletcher & Churchman and Mrs. Knight. Execution was promptly issued and came to the hands of the sheriff May 1, 1879. No levy was made, though the lien of the execution attached to the personal property of Knight when the writ came to the sheriff's hands, provided that such a writ, issued upon a judgment so obtained, could create a lien.

"On May 3, 1879, Knight suggested to Fletcher & Churchman and Mrs. Knight that more money could be realized out of his stock of goods by selling them out from the store in the usual way than by sale on execution. He gave it as his opinion that the stock was worth $20,000. Ayres, who was Mrs. Knight's counsel, was thereupon consulted about the sale of the goods to Fletcher & Churchman and Mrs. Knight, and advised it. Thereupon an agreement was made between Knight and Fletcher & Churchman and Mrs. Knight that Knight should turn over the goods to them in satisfaction of their judgment against him and of his debts to them. The stock on hand was really not worth $20,000, but was $5000 or $6000 short of that, as shown by subsequent invoice and sales after the arrangement was made. Fletcher & Churchman and Mrs. Knight took possession of the stock of goods on May 3, 1879, and put Knight in to sell out the stock as their agent in the ordinary course of business. There was no agreement as to his salary, though he took out of the proceeds of sales ten to fifteen dollars per week for his services.

"The business was carried on by Fletcher & Churchman and Mrs. Knight in this way until August 12, 1879, when Fletcher & Churchman became dissatisfied and the partnership was dissolved. The goods and proceeds of sales were divided between Fletcher & Churchman and Mrs. Knight equally, and

Fletcher & Churchman's share of the goods was removed from the store.   The goods on hand amounted to $9449.88.   The money realized from sales amounted to $5156.52.   Mrs. Knight's half of these amounts was applied in payment of the indebtedness of Knight to her, and Fletcher & Churchman's share on the indebtedness of Knight to them.   But as the amount received by Fletcher & Churchman fell short of paying his debt to them in the sum of $2805, they demanded of Knight that he should give them a new note for this sum, on the ground that he had overstated the amount of goods at the time they purchased them.   Knight thereupon gave them a note for this balance.

"The complainants, Jewell & Sons, recovered judgment against John Knight in the Superior Court of Marion County on March 23, 1881, for $440.20 and costs; and the complainants, Spang, Chalfant & Co., recovered judgment against Knight in the Circuit Court of the United States for the District of Indiana for $1032 on May 3, 1881.   Execution was issued on the judgment in favor of P. Jewell & Sons on April 21, 1881; and on April 22, 1881, it was returned *nulla bona.*   Execution was issued on the judgment in favor of Spang, Chalfant & Co. on May 4, 1881, and retur   d on the same day *nulla bona.*   And nothing has since been  id upon either of these judgments.

"After this transfer of the goods by Knight to Fletcher & Churchman and Mrs. Knight, Knight had no property subject to execution, and was insolvent.   The plaintiffs sold goods to Knight as stated, believing him solvent and in ignorance of the execution of said cognovit.

"That upon the hearing of the said cause before the Honorable Thomas Drummond, Judge of the Circuit Court of the United States for the District of Indiana, and the Honorable William A. Woods, District Judge of the United States for said district, sitting with said circuit judge, the above facts were found, and thereupon it became a question —

"1st.   Whether or not the delay from March 17 to May 1, 1879, in taking judgment upon the warrant of attorney, had the effect to render the purchase which was thereafter made

by the defendants Fletcher & Churchman and Mrs. Knight of the stock of goods of said John Knight voidable by the plaintiffs?

"Second. The *bona fides* of the original indebtedness of Knight to Fletcher & Churchman and Mrs. Knight not being questioned, whether or not, to render said sale void as to the complainants or other creditors, it must not also appear that the same was made by said John Knight with the fraudulent intent to cheat, hinder and delay said creditors, and that said Fletcher & Churchman and Mrs. Knight had knowledge of that fact at the time they made the purchase.

"Third. Whether or not, if such sale is voidable by the plaintiffs, it can be avoided by them for the payment of the entire indebtedness of said John Knight to them, or only for the payment of so much of said indebtedness as was contracted after the execution of said warrant of attorney.

"Fourth. Whether or not under the circumstances the sale by Knight to the other defendants was fraudulent as to the complainants' claims for goods sold during the time the cognovit was held — March 17 to May 1, 1879.

"Fifth. Whether under the circumstances the sale by Knight to the other defendants was fraudulent as to the complainants' claims for goods sold prior to March 17, 1879.

"Upon each and all of the above questions the opinions of said judges are and were opposed; and that the points upon which they so disagree may be ruled upon by the Supreme Court, in pursuance of the statutes in such case made and provided, the said judges have caused the above points upon which they have disagreed and are so opposed to be stated under their direction, with the facts so found upon which the disagreement occurred, and that the same be certified and be made part of the record in this cause, which is done accordingly."

*Mr. Benjamin Harrison* and *Mr. Horace Speed* for appellants.

*Mr. Joseph E. McDonald* and *Mr. Ferdinand Winter* for appellees. *Mr. John M. Butler* was with them on the brief.

Mr. Justice Gray delivered the opinion of the court.

The claim of each plaintiff being for less than $5000, the amount in dispute, as was admitted at the bar, is insufficient of itself to give this court jurisdiction. *Stewart* v. *Dunham*, 115 U. S. 61; *Gibson* v. *Shufeldt*, 122 U. S. 27.

The jurisdiction of this case therefore depends upon the statutes which provide that when, on the trial or hearing of any civil suit or proceeding before the Circuit Court held by the Circuit Judge and the District Judge, or by either of them and a Justice of this court, any question occurs upon which the opinions of the judges are opposed, the opinion of the presiding judge shall prevail and be considered as the opinion of the court for the time being; "the point upon which they so disagreed shall, during the same term, be stated under the direction of the judges, and certified, and such certificate shall be entered of record;" and the final judgment or decree "may be reviewed, and affirmed or reversed or modified, by the Supreme Court, on writ of error or appeal." Rev. Stat. §§ 650, 652, 693.

Under these statutes, and the earlier ones authorizing questions upon which two judges of the Circuit Court were divided in opinion to be certified to this court, it has been established by repeated decisions that each question so certified must be a distinct point or proposition of law, clearly stated, so that it can be definitely answered, without regard to other issues of law or of fact in the case.

The points certified must be questions of law only, and not questions of fact, or of mixed law and fact — "not such as involve or imply conclusions or judgment by the court upon the weight or effect of testimony or facts adduced in the cause." *Dennistoun* v. *Stewart*, 18 How. 565, 568; *Wilson* v. *Barnum*, 8 How. 258; *Silliman* v. *Hudson River Bridge Co.*, 1 Black, 582; *Daniels* v. *Railroad Co.*, 3 Wall. 250; *Brobst* v. *Brobst*, 4 Wall. 2; *Weeth* v. *New England Mortgage Co.*, 106 U. S. 605; *California Paving Co.* v. *Molitor*, 113 U. S. 609; *Waterville* v. *Van Slyke*, 116 U. S. 699; *Williamsport Bank* v. *Knapp*, 119 U. S. 357. The question of fraud or no

fraud is one necessarily compounded of fact and of law, and the fact must be distinctly found before this court can decide the law upon a certificate of division of opinion. *Ogilvie* v. *Knox Ins. Co.*, 18 How. 577, 581; *United States* v. *City Bank*, 19 How. 385; *Havemeyer* v. *Iowa County*, 3 Wall. 294; *Watson* v. *Taylor*, 21 Wall. 378.

The whole case, even when its decision turns upon matter of law only, cannot be sent up by certificate of division. *Saunders* v. *Gould*, 4 Pet. 392; *United States* v. *Bailey*, 9 Pet. 267; *Harris* v. *Elliott*, 10 Pet. 25; *White* v. *Turk*, 12 Pet. 238; *United States* v. *Briggs*, 5 How. 208; *Sadler* v. *Hoover*, 7 How. 646; *United States* v. *Northway*, 120 U. S. 327; *State Bank* v. *St. Louis Co.*, 122 U. S. 21. Nor can a splitting up of the whole case into the form of several questions enable the court to take jurisdiction. *White* v. *Turk*, above cited; *Nesmith* v. *Sheldon*, 6 How. 41; *Luther* v. *Borden*, 7 How. 1, 47; *Webster* v. *Cooper*, 10 How. 54.

In *Webster* v. *Cooper*, decided at December term, 1850, it appearing by the record that the whole case had been divided into points and sent up to this court, and that several of the latter points could not have arisen until the previous ones had been first decided, this court declined to take jurisdiction, and Chief Justice Taney said: "This court has frequently said that this practice is irregular, and would, if sanctioned, convert this court into one of original jurisdiction in questions of law, instead of being, as the Constitution intended it to be, an appellate court to revise the decisions of inferior tribunals. Indeed, it would impose upon it the duty of deciding in the first instance, not only the questions of law which properly belonged to the case, but also questions merely hypothetical and speculative, which might or might not arise as previous questions were ruled the one way or the other." 10 How. 55.

As the Chief Justice there observed, in some earlier instances, questions irregularly certified had been acted upon and decided. But the later decisions already referred to show that this court has since been careful not to exceed its lawful jurisdiction in this class of cases; and that under the existing statutes, as under those which preceded them, whenever the

jurisdiction of this court depends upon a certificate of division of opinion, and the questions certified are not such as this court is authorized to answer, the case must be dismissed.

In the present case, general creditors of Knight seek to set aside, as fraudulent against them, a warrant of attorney to confess judgment, executed by Knight to secure the payment of money lent to him in good faith by his wife and his bankers, and a subsequent sale of his stock of goods to satisfy those debts.

The statement (embodied in the certificate and occupying three closely printed pages in the record) of what the judges below call "the facts found" is in truth a narrative in detail of various circumstances as to the debtor's pecuniary condition, his dealings with the parties to this suit and with other persons, and the extent of the preferred creditors' knowledge of his condition and dealings. It is not a statement of ultimate facts, leaving nothing but a conclusion of law to be drawn; but it is a statement of particular facts, in the nature of matters of evidence, upon which no decision can be made without inferring a fact which is not found.

The main issue in the case, upon which its decision must turn, and which the certificate attempts in various forms to refer to the determination of this court, is whether the sale of goods was fraudulent as against the plaintiffs. That is not a pure question of law, but a question either of fact or of mixed law and fact.

In the absence of any bankrupt or insolvent law, a debtor may lawfully give a preference to one of his creditors, if he does not thereby intend to defraud the others; and a sale and delivery of goods in satisfaction of an honest debt cannot be avoided by other creditors, unless made and received with intent in fact to defraud them. This is well settled by the decisions of this court, as well as by those of the highest court of the State of Indiana, where these transactions took place. *Buckingham* v. *McLean,* 13 How. 151, 167; *Warner* v. *Norton,* 20 How. 448; *Robinson* v. *Elliott,* 22 Wall. 513, 520; *Medsker* v. *Bonebrake,* 108 U. S. 66; *Stewart* v. *Dunham,* 115 U. S. 61; *Jones* v. *Simpson,* 116 U. S. 609; *People's Savings*

*Bank* v. *Bates*, 120 U. S. 556; *Huiskamp* v. *Moline Wagon Co.*, 121 U. S. 310, 319; *Pence* v. *Croan*, 51 Indiana, 336; *Leasure* v. *Coburn*, 57 Indiana, 274; *Willis* v. *Thompson*, 93 Indiana, 62. The fact that one of the creditors preferred was the debtor's wife does not affect the question. *Magniac* v. *Thompson*, 7 Pet. 348; *Bean* v. *Patterson*, 122 U. S. 496.

Many of the cases cited in the learned arguments at the bar were of voluntary conveyances, or arose under a bankrupt act, or presented the question whether there was sufficient evidence of fraudulent intent to be submitted to a jury, or were decided by a court authorized to pass upon the facts as well as the law, and therefore have no direct or important bearing upon this case.

Not one of the questions certified presents a distinct point of law; and each of them, either in express terms or by necessary implication, involves in its decision a consideration of all the circumstances of the case. The first question, whether the six weeks' delay in taking judgment upon the warrant of attorney made the subsequent sale voidable by the plaintiffs, as well as the second question, whether evidence of the debtor's fraudulent intent and of the preferred creditors' knowledge of that intent was requisite to render "said sale" void as against the plaintiffs, could not be determined except upon a view of all the attendant circumstances. The third question, whether "such sale," if fraudulent, would be voidable in favor of the whole or of part only of the plaintiffs' debts, could not arise until the sale had been decided to be fraudulent. The fourth and fifth questions frankly submit in two subdivisions the general question, whether "under the circumstances" the sale was fraudulent as against the plaintiffs.

As was recently said by this court, speaking of questions certified in similar form, "They are mixed propositions of law and fact, in regard to which the court cannot know precisely where the division of opinion arose on a question of law alone;" and "It is very clear that the whole case has been sent here for us to decide, with the aid of a few suggestions from the circuit judges of the difficulties they have found in doing so." *Waterville* v. *Van Slyke*, 116 U. S. 699, 704.

Upon this record, therefore, this court cannot decide, either that the decree of the Circuit Court should be affirmed, or that it should be reversed or modified, but must order the

*Appeal to be dismissed.*