128 U.S. 426
 9 S.Ct. 113
 32 L.Ed. 503
 FIRE INS. ASS'N, Limited,
v.
WICKHAM et al.
 November 26, 1888.
 
 1
 [
 
 
 2
 This case comes here by writ of error and a certificate of division of opinion of the judges of the circuit court. The action was brought upon a policy of insurance against fire, to recover damages occasioned by the burning of the propeller St. Paul, of which the plaintiffs below, the defendants in error, were the owners. The vessel was insured against fire in 10 companies, including the plaintiff in error, which issued 2 policies, amounting together to $5,000. The St. Paul first took fire at Detour, where the river St. Mary enters Lake Huron, and had to be scuttled and sunk. She was then raised, and taken to Detroit for repairs. There she took fire a second time, and had to be again sunk. The mere injury to the vessel was settled and raid for by the insurers before it was due by the terms of the policies. The plaintiff contends that the expense of raising and saving the vessel was not included in this settlement, but was left for future adjustment, and this suit was brought to recover that part of the loss. Similar suits were brought against the other companies, all of which were, by agreement, to abide the event of this. The defendants in error had a verdict, and recovered judgment for $2,297.65, which would not have been sufficient to give this court jurisdiction but for the difference of opinion between the judges. That difference arose on the trial, as will appear by the following statement of the case: It appeared in evidence that the first fire, at Detour, occurred on the 10th of November, 1883, and the second, at Detroit, on the 24th of the same month, while the cargo was being unladen in order to make the necessary repairs. In both cases the vessel was sunk for the purpose of saving her and her cargo, and raised again at considerable expense. On the 15th of December, 1883, a written agreement was entered into between the plaintiffs and the adjusting agents of the several insurance companies, for the purpose of adjusting the amount of loss caused by the fires to the hull, tackle, awnings, apparel, furniture, engine and boiler connections and appurtenances thereto belonging; by which agreement certain arbitrators were appointed to make such adjustment, without reference to any other question or matter of difference within the terms and condition of the insurance, and of binding effect only as far as regards the actual cash value of, or damage to, such property covered by the policies. The adjustment under this agreement was completed December 26, 1883, showing a loss of $15,364.78, the proportion due by the plaintiffs in error being $1,920.60. The adjusting agent sent proofs of the loss to the companies, with the following letter to each, viz.:
 
 
 3
 'BUFFALO, January 12, 1884.
 
 
 4
 'GENTLEMEN: I inclose herewith proofs, Jno. W. Wickham, Jr., managing owner, for loss and damage prop. St. Paul, which I trust will be found satisfactory:
 
 The claim as made covers
 
 5
 only the loss and damage
 
 
 6
 by fire and water, as per
 
 
 7
 agreement, on the tackle,
 
 
 8
 awnings, apparel, furniture,
 
 
 9
 etc., of.......................... $ 1,735 08
 
 And the appraisers' award
 
 10
 on hull, engines, mach'y,
 
 
 11
 etc., of .......................... 13,629 70
 
 
 12
 ---------
 
 
 13
 Aggregating in all,............... $15,364 78
 
 
 14
 'The assured will make further claims for expenses of raising the propeller, and is now preparing the statement of such expenses, to submit with his subsequent claim.
 
 
 15
 'Yours, truly,
 
 
 16
 'W. D. ALLEN, Adjuster.'
 
 
 17
 At the trial it was admitted that the cost of raising and saving the vessel was upwards of $15,000. The plaintiffs admitted that they had been paid the cost of repairing the vessel, as set forth in the proofs of loss prepared and forwarded to the companies as aforesaid, but claimed that they had not been paid any part of the cost of raising and saving the vessel; that before the commencement of this suit they demanded payment thereof, which was refused, the insurers denying liability therefor, and the same remains unpaid. The defendant claimed that the payment of the cost of said repairs was made by way of accord and satisfaction of the plaintiff's entire claim, and offered in evidence the following receipts:
 
 
 18
 '$1,344.42.
 
 
 19
 JANUARY 19, 1884.
 
 
 20
 'Received from the Fire Insurance Association of London, England, thirteen hundred and forty-four 42-100 dollars, it being in full of claims and demands for loss or damage by fire which occurred on the 10th and 24th days of November, 1883, to property insured by policy No. 180,617, Buffalo, New York, agency, and, in consideration of said payment, said policy is hereby canceled and surrendered to said company, and all further claims by virtue of said policy forever waived.
 
 
 21
 [Signed] 'JOHN W. WICKHAM, Jr.,
 
 
 22
 'Managing Owner.
 
 
 23
 'W. B. COMSTOCK,
 
 
 24
 'Per WICKHAM.'
 
 
 25
 There was also a receipt indorsed upon the policy No. 180,617, as follows:
 
 
 26
 'JANUARY 19, 1884.
 
 
 27
 'In consideration of four 47-100 dollars, return premium, the receipt of which is hereby acknowledged, this policy is canceled and surrendered to the Fire Insurance Association, Limited, of England.
 
 
 28
 [Signed] 'JOHN W. WICKHAM, Jr.,
 
 
 29
 'Managing Owner.
 
 
 30
 'W. B. COMSTOCK,
 
 
 31
 'Per WICKHAM, Jr.'
 
 
 32
 A similar receipt for $576.18 was given by the plaintiffs to the defendant for the amount due on the other policy issued by the latter; and like receipts, all of the same date except two, which were a few days later, were given to the other companies concerned; all of which were given in evidence by the defendant. The defendant also gave in evidence the following paper, signed by the plaintiffs, marked 'Exhibit QQ,' viz.:
 
 
 33
 'NEW YORK, January 19, 1884.
 
 
 34
 'This is to certify that the loss and damage by fire which occurred on the 23d day of November, 1883, to the steamer St. Paul, is this day adjusted for the sum of fifteen thousand three hundred and sixty-four and 78-100 dollars, ($15,364.78,) payable without discount upon presentation of the policies to the several companies interested by the assured, and apportioned among the several companies as follows, viz.:
 
 
 35
 Insures. Pays.
 
 Continental, of New
 York............... $7,500 00. $2,880 90
 London & Liverpool
 
 36
 & Globe............. 6,000 00. 2,304 70—Paid.
 
 
 37
 Fire Insurance Association. 3,500 00. 1,344 42—Paid.
 
 
 38
 Queen's, of England.. 7,000 00. 2,688 84—Paid.
 
 Fire Ins. Ass'n, 2d
 
 39
 policy.............. 1,500 00. 576 18—Paid.
 
 Security, of New
 
 40
 Haven............... 2,500 00. 960 30—Will remit.
 
 Exchange, of New
 
 41
 York................ 2,500 00. 960 30—Paid 1, 19, '84
 
 Mechanics', of New
 
 42
 York................ 2,500 00. 960 30—Paid 1, 19, '84.
 
 
 43
 German, of Pa........ 2,500 00. 960 30—Will remit.
 
 Prescott Insurance
 
 44
 Co.................. 2,500 00. 960 30—Remitted.
 
 Greenwich, of New
 
 45
 York................ 2,000 00. 768 24—Paid 1, 19, '84.
 
 
 46
 ----------- -----------
 
 40,000 00 $15,364 78
 
 47
 [Signed] 'JOHN W. WICKHAM, Jr.,
 
 
 48
 'Managing Owner.
 
 
 49
 'W. B. COMSTOCK,
 
 
 50
 'Per JOHN W. WICKHAM, Jr.
 
 
 51
 'JOHN K. OAKLEY,
 
 
 52
 'J. H. WELLMAN, 'Committee.'
 
 
 53
 The court held that, if these documents were sufficient evidence of an intent to compromise and settle the expense of raising and saving the propeller, although the amount paid was only that of the injury to the property, yet the anticipation of such payment nearly 60 days before, according to the terms of the policies, it was due, was a sufficient consideration for such compromise. The defendant having rested, the plaintiffs, in rebuttal, offered evidence tending to show that, in January, 1884, the said Wickham went to New York; and that on the 19th of that month, the day on which the receipts given by him to the insurance companies, and the paper marked 'QQ,' were dated and signed, and before they were signed, he, the said Wickham, had an interview with Oakley and Wellman, the committee of the insurance companies who signed the last-named paper, and also evidence of certain communications between said committee and Wickham in that interview, which showed, or tended to show, that the said receipts and said paper 'QQ' were not intended to refer to or embrace the claim of the plaintiffs for raising and saving said vessel, but only the claim for the damages specially included in the adjustment made by the arbitrators before mentioned. The defendants objected to the introduction of this parol testimony, tending to contradict the receipts and drafts given in evidence and the certificate of January 19th, Exhibit QQ, upon the ground that such evidence was not admissible, in the absence of fraud, misrepresentation, and mistake. These objections were overruled by the presiding judge, and the evidence was received and submitted to the jury. This is one of the points on which the judges differed in opinion. They state the question as follows: 'On the facts stated in the foregoing record, was the parol testimony offered in evidence by the plaintiffs admissible to vary and contradict the certificate of January 19, 1884, Exhibit QQ, and the receipts and drafts hereinbefore set forth?' The evidence offered by the plaintiffs having been given to the jury, the defendants offered evidence tending to contradict the same, and to show that the whole matter arising out of the loss was intended to be compromised and settled by what took place between the parties on the 19th of January, 1884. There was no evidence that said agreement of January 19th, Exhibit QQ, and the several receipts and discharges executed by the plaintiffs, were obtained by any fraud or misrepresentation of the defendants or their agents. After the evidence was closed, the defendant requested the court to charge the jury that the defendant was entitled to a verdict. On this point the judges who tried the cause were also divided in opinion, the presiding judge being of opinion that the request should not be granted; and this is the second question certified to this court for its decision.
 
 
 54
 The defendants in error now move to dismiss the writ of error, mainly on the ground that the questions certified are not distinct points of law which can be properly certified to this court upon a difference of opinion between the judges of the circuit court.
 
 
 55
 F. H. Canfield and H. H. Swan, for defendants in error.
 
 
 56
 [Argument of Counsel from pages 431-434 intentionally omitted]
 
 
 57
 C. I. Walker and F. A. Baker, for plaintiff in error.
 
 
 58
 BRADLEY, J.
 
 
 59
 This subject has been so often and so recently discussed by this court that it is hardly necessary to do more than to state the conclusion that must be drawn from the case as presented. The law is so clearly stated, and the cases are so fully cited by Mr. Justice GRAY in the recent case of Jewell v. Knight, 123 U. S. 426, 8 Sup. Ct. Rep. 193, that nothing further need be said. It is there laid down—First, that the question certified 'must be a distinct point or proposition of law, clearly stated, so that it can be definitely answered, without regard to other issues of law or fact in the case. Secondly. It must be a question of law only, and not a question of fact, or of mixed law and fact; hence it must not involve or imply a conclusion or judgment upon the weight or effect of testimony or facts adduced in the cause,—as, for example, a question of fraud, which is necessarily compounded of fact and of law. Thirdly. It must not enbrace the whole case, even when its decision turns upon matter of law only, and even though it be split up into the form of questions.' These propositions are illustrated by examples, which need not be repeated here. Applying them to the case in hand, we can have but little difficulty in disposing of the present motion. The second question certified is clearly obnoxious to the second and third rules. It asks us to decide whether, upon all the evidence in the case, the defendant was entitled to a verdict. This would require us to decide upon the weight of the evidence, and the conclusions of be drawn from the facts. It would also require us to decide the whole case. The first question is not open to these objections. It presents a single point of law, namely, whether parol evidence may or may not be introduced to explain such documents as those which were given in evidence by the defendant. We are not now asked to decide whether such evidence should have been allowed in this case. That will be the question for consideration when the case is argued on its merits. On the present motion we are only required to decide whether the question is one of pure law, and one that presents but a single point for consideration. We think it is of that character. If only a single writing had been offered in evidence by the defendant, the question whether parol evidence could have been given to alter or explain it would clearly have been a single question of law. The fact that many writings were offered, all of the same general character, and offered to prove the same fact, does not make the case to differ. The motion to dismiss the writ must be denied.