THE ATLANTIC REFINING COMPANY

*v.*

JOSIAH STOKES et al.

[Submitted January 31st, 1910. Decided February 4th, 1910.]

1. It is the right of an individual who is failing or insolvent to prefer one of his creditors.

2. It is the right of any creditor of a failing or insolvent debtor, acting honestly and in good faith, to obtain security from his debtor to secure the debt or to extinguish the debt by purchasing property of the debtor which is of the same value as the indebtedness.

3. The limitation on the right of a failing or insolvent debtor to prefer one of his creditors is found in a want of integrity of purpose on the part of the preferred creditor, and there must be no combination between him and the debtor to hinder, delay, or defraud other creditors of the debtor.

4. It is not sufficient for the purpose of setting aside a conveyance as in fraud of creditors that the object of the grantor was fraudulent. It must be shown that the grantee participated in that intent, or had knowledge of the object of the grantor, or of such facts as should have put him on inquiry as to the object.

5. Where a conveyance is made by a failing or insolvent debtor to secure an antecedent debt or to discharge such debts, knowledge on the part of the grantee that the grantor's object was to defeat other creditors will not operate to vitiate the conveyance, providing the grantee did not actually participate in that purpose by making a reservation in favor of the grantor or in some other manner combining with the grantor to enable him to defeat the other creditors.

6. In an action to set aside a conveyance as in fraud of creditors, evidence *held* to show that the grantee receiving the conveyance in discharge of an antecedent debt did not combine with the grantor or participate in a fraudulent purpose to defeat other creditors.

7. That a grantor in a conveyance by an insolvent debtor given to discharge an antecedent debt was permitted by the grantee to occupy the premises without payment of rent does not show a fraudulent participation by the grantee in the purpose of the grantor to defeat other creditors, where it is shown that rent was to be paid.

8. Where a debt is past due, and the value of property conveyed by the insolvent debtor is about equal to the debt, and there is an absence of knowledge on the part of the grantee of other indebtedness of the grantor, no fraudulent purpose can be properly assumed.

On bill to set aside conveyance of land.

*Messrs. French & Richards,* for the complainant.

*Messrs. Wilson & Carr,* for the defendants.

LEAMING, V. C.

The single question presented is whether Mr. Stokes in fact owed Mr. Tatem, on July 28th, 1908, approximately $1,200, and received the conveyance in question in good faith and without any fraudulent or improper purpose. If the indebtedness existed to the amount named and the conveyance was in good faith, it is immaterial, so far as the subsequent judgment creditor of Mr. Stokes is concerned, whether the conveyance was absolute or as security, for the surplus money, which now stands in the place of the property conveyed, is only about $500.

The law controlling controversies of this nature is well defined. So far as the powers of this court extend it is the right of an individual who is in failing circumstances or insolvent to prefer one of his creditors; and it is also the right of any creditor of such an individual, acting honestly and in good faith,

to obtain security from his debtor to secure the debt, or to extinguish the debt by purchasing property of the debtor which is of the same value as the credits surrendered. The limitations upon these rights are to be found in a want of integrity of purpose upon the part of the preferred creditor. There must be no combination between him and his debtor to hinder, delay or defraud other creditors of the debtor. It is not sufficient for the purpose of setting aside such a conveyance that the object of the grantor was fraudulent; it must be shown that the grantee participated in that intent, or had knowledge of the object of the grantee, or of such facts as should have put him upon inquiry as to the object. *Roe* v. *Moore, 35 N. J. Eq. (8 Stew.) 526; Muirheid* v. *Smith, 35 N. J. Eq. (8 Stew.) 303, 308; Merchants National Bank* v. *Northrup, 22 N. J. Eq. (7 C. E. Gr.) 58, 60.* And when the conveyance is made to secure an antecedent debt or to discharge such a debt, it has been frequently held that even knowledge upon the part of the grantee that his grantor's purpose is to defeat other creditors will not be operative to vitiate the conveyance, providing the grantee did not actually participate in that purpose by making a reservation in favor of the grantor, or in some other manner combining with the grantor to enable him to defeat his creditors. The reasons underlying the distinction between a present consideration and a pre-existing consideration are well expressed in a note to *20 Cyc. 472,* as follows:

"The reasons that have been assigned for the distinction between one who purchases for a present consideration and one who purchased in satisfaction of a pre-existing debt are sound and unassailable. The former is in every sense a volunteer. He has nothing at stake—no self-interests to serve. He may, with perfect safety, keep out of the transaction. Having no motive of interest prompting him to enter it, if yet he does enter it, knowing the fraudulent purpose of the grantor, the law, very properly, says that he enters it for the purpose of aiding that fraudulent purpose. Not so with him who takes the property in satisfaction of a pre-existing indebtedness. He has an interest to serve. He can keep out of the transaction only at the risk of losing his claim. The law throws upon him no duty of protecting other creditors. He has the same right to accept a voluntary preference that he has to obtain a preference by superior diligence. He may know the fraudulent purpose of the grantor, but the law sees that he has a purpose of his own to serve, and if he goes no further than is necessary to serve that purpose, the law will not charge him with fraud by reason of such knowledge."

Both Mr. Stokes and Mr. Tatem have testified that about $1,200 was due to Mr. Tatem at the time of the conveyance for money which the latter had loaned to the former in small amounts covering a long period of time. The accumulation of that amount of indebtedness in the manner stated, without some promissory notes or other evidences of the loans being executed by the borrower, is undoubtedly unusual and can appropriately excite suspicion, but when two men of the standing of these men in this community positively testify to the fact, I do not feel justified in doubting its truth.

It cannot be said to be unworthy of belief that one well-circumstanced friend should advance to another, whom he believed to be solvent, the amount here stated in the manner claimed. The ledger accounts, showing the dates and amounts of the several loans, was undoubtedly incompetent evidence in the absence of original entries, but the sworn statement of the two men that the aggregate amount was loaned as stated by them is sufficient. I am unable to believe that they swore falsely.

The value of the interest of Mr. Stokes which was conveyed appears to have been about the amount of the indebtedness.

Both Mr. Stokes and Mr. Tatem have testified that Mr. Tatem knew nothing of the indebtedness of Mr. Stokes to the Atlantic Refining Company at the date of the conveyance, and also that Mr. Tatem had asked for security for the money due on prior occasions, and that it had been promised and its execution deferred.

The fact that Mr. Stokes was permitted to occupy a part of the premises conveyed without paying rent does not, to my mind, indicate fraud, if it be true, as stated by both parties, that rent was to be paid. Had the conveyance, in fact, been made as a mere cloak to protect the grantor from his creditors, it is not improbable that more care would have been observed to give it the appearance of regularity. One of the badges of fraud defined in *20 Cyc. 450* is:

"Circumstances indicating excessive effort to give the transaction the appearance of fairness or regularity, which are not usually found in such transactions, are to be regarded as badges of fraud."

It was but natural, under the circumstances, for Mr. Tatem to refrain from dispossessing Mr. Stokes.

With the debt past due, and with the value of the property conveyed about the amount of the debt, and with an absence of knowledge on the part of the grantee of other indebtedness of the grantor, no fraudulent purpose can be properly assumed. In *Muirheid* v. *Smith, supra* (at *p. 309*), it is said:

"Astute as courts should be in the detection of fraud, they are not justified in finding it on grounds which show no more than its possible existence. When the acts of the parties admit of a reasonable interpretation in favor of honesty and fair dealing, they should receive it."

I will advise a decree directing the surplus money to be paid to petitioner.