ENGLISH et al. v. BROWN et al.

(Circuit Court of Appeals, Third Circuit. January 26, 1916.)

Nos. 2007, 2008.

1. FRAUDULENT CONVEYANCES ⊙⟺170—TRANSFERS BETWEEN HUSBAND AND WIFE—PAYMENT OF PRE-EXISTING INDEBTEDNESS.

A husband in failing circumstances was indebted to his wife, and also to complainants, who had brought suit on their debt. The wife knew of such suit, and that the husband was in failing circumstances, and both she and the husband knew that he could not discharge both debts, and that payment of the one debt meant loss to the other creditor of his or her debt. The husband paid his debt to his wife, by transferring to her corporate stock the value of which was inadequate to cover his debt to her. *Held* that, in view of the rule in New Jersey that an insolvent debtor may prefer one creditor, even though the preferred creditor is his wife, this transfer was not a fraud upon complainants, even though the husband intended to defraud them; the wife accepting the stock for the sole purpose of obtaining payment of her debt, and not for the purpose of aiding her husband to defraud complainants.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 521; Dec. Dig. ⊙⟺170.]

2. JUDGMENT ⊙⟺589—MERGER OF CAUSES OF ACTION.

B. was one of the promoters of a corporation, and contracted to give complainants a specified amount of the preferred and common stock in such corporation to be issued to him. He failed to turn over any stock to complainants, and they sued for breach of the contract, and recovered judgment for damages in New York, upon which they sued and recovered a judgment in New Jersey. Thereupon they brought an action to set aside transfers of the stock from B. to his wife, on the ground that they were made to defraud creditors, and were unsuccessful. *Held* that, if they ever had any equitable lien on the stock, it was merged in the judgment for damages and no longer existed.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062–1065, 1100, 1101; Dec. Dig. ⊙⟺589.]

Appeal from the District Court of the United States for the District of New Jersey; Wm. H. Hunt, Judge.

Suit by Paul A. English and others against Ella Wyman Brown and others. From a decree (219 Fed. 248) granting complainants part of the relief asked for, defendants appeal, and complainants file cross-appeal. Affirmed in part, and reversed in part, with directions.

Andrew Foulds, Jr., of New York City, and H. C. Brome, of Omaha, Neb., for complainants.

C. G. Parker, of Newark, N. J., for defendants.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The principal questions for review are, first, whether certain transfers of stock made by a husband to his wife under circumstances which include the husband's indebtedness to his wife and to others, and the husband's insolvency and his wife's knowledge thereof, were in fraud of creditors; and, second, whether

⊙⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an equitable lien upon the stock transferred prevails against the wife in favor of the complainants.

The complainants, who will be referred to informally as English brothers, were interested in plaster mills located in various parts of the country. Charles B. Brown, the husband of the defendant Ella Wyman Brown, was associated with Jones and McCormick, lawyers, in the promotion of the United States Gypsum Company. In January, 1902, Brown concluded a contract with English brothers by which their plaster properties were conveyed to the Gypsum Company upon terms unimportant to this litigation. Incidental to this transaction, English brothers and Brown had entered into another but entirely separate contract, whereby Brown promised to give English brothers, "for their services in this deal out of (his share of) the promotion fund, $31,250 preferred stock and $18,750 common stock of U. S. Gypsum Co. when the stock is issued for promotion." In May, 1902, the promotion stock was issued, and Brown received 330 shares of preferred and 330 shares of the common stock of the company. Aside from the promotion shares which were issued to him directly, Brown was interested in promotion shares to be issued to Jones and McCormick, under a contract made between them in 1901. By this contract, Brown or his assignee became entitled to, and in February, 1912, received, 137 shares of the preferred and 152 shares of the common stock, making Brown's entire holdings of promotion stock 467 shares of preferred and 482 shares of common.

Brown failed to deliver to English brothers the shares promised under the contract of January 10, 1902, and at different times transferred his shares and assigned his rights in the Jones and McCormick contract to his wife. He made the transfers to his wife at different periods, and, as it is contended, under different circumstances, which figured in the decree entered in the litigation subsequently instituted. The transfers were as follows:

1. On February 20, 1903, Brown transferred to his wife 200 shares of preferred and 100 shares of common stock of the company.

2. On May 15, 1905, he transferred or assigned to his wife all his interest in the Jones and McCormick contract, which in February, 1912, yielded her 137 shares of the preferred and 152 shares of the common stock.

3. On August 3, 1909, he transferred to his wife 130 shares of the preferred and 230 shares of the common stock.

After the second transfer, namely, on June 13, 1905, English brothers sued Brown on the contract in the Supreme Court of New York. On January 5, 1906, that court made an award that Brown deliver to English brothers, within thirty days, the shares in question, or, in the alternative, suffer damages in the sum of $16,298.74. Brown neither delivered the stock nor paid the judgment, but retaliated by instituting an action by foreign attachment against English brothers, in which he attached the judgment against himself, and recovered judgment in the sum of $52,750. This judgment was vacated in June, 1910. Brown v. English, 131 App. Div. 909, 115 N. Y. Supp. 1113; Brown v. English, 137 App. Div. 900, 122 N. Y. Supp. 1123.

In the meantime Brown had moved to New Jersey, where English brothers instituted two actions against him in a court of that State, one upon the judgment entered against him in the State of New York for the damages awarded, and the other for damages growing out of Brown's alleged malicious action against them in the State of New York. Judgment was entered by the New Jersey court in the former suit for $21,490.20, and in the latter for $5,320.34. While these actions were pending, Brown died, and Ella Wyman Brown, his administratrix, was made party. In the course of her administration, Ella Wyman Brown filed an inventory in the Orphans' Court of Morris County, New Jersey, showing Brown's estate to be insolvent, whereupon English brothers filed a petition alleging that Brown owned the promotion shares of stock of the Gypsum Company transferred to his wife, and praying discovery of the condition of his estate with respect to that stock. These proceedings were abortive and were subsequently discontinued. On December 5, 1912, the complainants filed a bill in the District Court of the United States for the District of New Jersey, seeking to avoid the stock transfers by Brown to his wife on the ground that they were made in fraud of the complainants' rights as creditors, and inferentially, to establish a claim of an equitable lien upon the stock. We have now before us an appeal and a cross-appeal from the decree entered in that case.

As appears in its opinion, reported in 219 Fed. 248, the District Court treated each transfer as a separate transaction, controlled and adjudged by the circumstances surrounding it. The court found that the first transaction, or the transfer of 1903, was valid, saying that:

"In the light of the decisions of the New Jersey Courts, which are not out of harmony with the decisions of the Supreme Court of the United States, the transfer to Mrs. Brown by her husband was valid, and was made for ample consideration by way of advances made to him by her from her separate estate, and with intent on his part to repay her, and without intent or purpose on his or her part to hinder or delay these plaintiffs or any one else in the collection of any claims that they might have against him at the time of the transfer. The stock, therefore, was lawfully made over to Mrs. Brown, and the plaintiffs have failed to establish any right or claim to it, or to any proceeds which ever passed into the hands of Mrs. Brown by reason of any sales of it, or any part of it."

In holding valid the second transaction, that is, the assignment on May 15, 1905, of Brown's interest in the Jones and McCormick contract, the court said:

"This, too, under the evidence, must be regarded as a bona fide transfer or sale and not as a pledge. * * * The conclusion is irresistible that when the transfer was made, Brown was solvent and paid a fair consideration, and that he and his wife acted in good faith in the matter."

We concur with the conclusions of the learned trial judge that the first and second transfers of stock by Brown to his wife were valid, and subscribe to the reasoning by which those conclusions were reached, as it appears at length in the opinion reported in 219 Fed. 253 to 261. It is therefore unnecessary to review the testimony or repeat the considerations which control our judgment in affirming this portion of the decree. It may, however, have a bearing upon a discus-

sion of the third transfer to note that in reaching the conclusion that the first and second were valid, the learned trial judge was greatly impressed, if not controlled, by the fact of Brown's solvency at the time of those transfers as evidence of good faith and lack of fraud. Evidence of Brown's solvency at the time of the first and second transfers and of his insolvency at the time of the third transfer seems to be the evidence upon which the learned trial judge distinguished the transactions and upon which he found the first two valid and the last invalid. While we recognize the probative force of the evidence of Brown's solvency as affecting the validity of the first two transfers, we are not inclined to hold that the evidence of his insolvency at the time of the third transfer is alone sufficient to distinguish that transaction from the former and to compel a different decree. The change in Brown's affairs from solvency to insolvency creates a change in the questions presented by the several transactions, but does not of itself necessarily transform the transaction from a valid to a fraudulent one.

The decree holding valid the first and second transfers was based upon evidence which established that at the time of the first and second transfers, Brown was indebted to his wife for monies loaned him from her separate estate, in amounts equal to the value of the stock transferred; that he transferred only so much of the stock as was necessary to discharge his obligations to his wife, retaining the balance; that he was solvent, and his solvency was known to his wife, and that English brothers had not asserted a claim to the stock transferred.

[1] When the learned trial judge came to consider the third transaction, which embraced the transfer on August 3, 1909, of the remainder of Brown's shares, he conceived that he was confronted with a "changed situation." With respect to Brown's indebtedness to his wife, he said:

"It may be assumed that between May 15, 1905 (the date of the second transfer), and August 3, 1909 (the date of the third transfer), her advances to her husband and his collections for her account aggregate $20,963.18, so that when in 1909 Mr. Brown transferred to her all the stock he then had in the corporation, 130 shares of preferred and 230 shares of common, *their value was inadequate to cover his debt to her.*"

He further found that while Brown's wife had loaned to her husband this considerable sum of money between the dates of the second and third transfers, English brothers, within the same period, had instituted their action in the State of New York making a claim to Brown's shares; that Brown, as well as his wife, knew of the suit of English brothers and of its termination; that—

"much of the money advanced by her was received by Brown *when he was in failing circumstances* and *when Mrs. Brown knew he was so situated,* and the shares were turned over to Mrs. Brown *when he was without means wherewith to meet the claims of the English brothers* under the original agreement between himself and them, and *when he and his wife both knew that the English brothers were both diligently pressing their rights* and that *the transfer of the stock would necessarily operate to hinder and delay the collection of the New York judgment held by the English brothers,* and which was without just right attached by Brown. I should say that under such circum-

stances, the transaction ought not to be sustained, for the manifest purpose of the turning over on his part *was to make it impossible* for his judgment creditors to recover that to which they were justly entitled and to which they had been entitled ever since the organization of the 'Gypsum Company, and I think it must be found *that the wife, for the purpose of aiding him as well as to obtain a preference*, took the shares *with full knowledge of the circumstances* and of the judgment and the proceedings on the part of her husband to defeat the payment of the same, *and that his and her acts were done with the purpose of hindering and defrauding his creditors, the English brothers.*"

The substance of this finding, as we understand it, is that although Brown was bona fide indebted to his wife and the consideration paid by her for the stock was adequate, yet her knowledge of her husband's insolvency, of his indebtedness to English brothers, and of his inability to pay the same if she acquired the stock, disclosed the wife's complicity in her husband's fraud and made the transaction void. In searching for evidence of fraud in the third transaction different from that which related to the first and second transactions, we find nothing that distinguishes the latter from the former excepting the evidence that in the last transaction Brown transferred to his wife the entire remainder of his stock, and not, as in the other transactions, only a part of it; that at the time of the last transfer Brown had become insolvent, and English brothers were pressing their claim against him; and Brown's wife had knowledge of both of these facts. This evidence does change the situation, at least to the extent of presenting a question different from those presented by the first two transactions. The difference in the situation, however, does not alone and of necessity compel a different finding, for the new question created by the changed situation must be determined by principles of law applicable to its peculiar features. And just here is the main question in the case, whether under the evidence as it relates to the third transaction, the trial court erred in deciding that the transfer of stock, in view of Brown's insolvency and his wife's knowledge thereof, was in fraud of other creditors and therefore invalid.

The learned trial judge first disposed of certain questions preliminary to the main consideration by asserting the jurisdiction of a court of equity to recognize and enforce the payment of a debt of a husband to his wife, English v. Brown (D. C.) 219 Fed. 249, cases cited, and by sustaining the right of an insolvent debtor to prefer a creditor under the New Jersey law, Green v. McCrane, 55 N. J. Eq. 436, 37 Atl. 318, even when the preferred creditor is his wife. Jewell v. Knight, 123 U. S. 426, 8 Sup. Ct. 193, 31 L. Ed. 190. He then found the third transfer invalid by applying to its peculiar circumstances the general principle of law that:

"A sale may be void for bad faith though the buyer pays full value of the property bought. This is the consequence, where his purpose is to aid the seller in perpetrating a fraud upon his creditors, and where he buys recklessly, with guilty knowledge." Cadogan v. Kennett, 2 Cowp. 432; Clements v. Moore, 6 Wall. 299, 18 L. Ed. 786; Wadsworth v. Williams, 100 Mass. 126; Robinson v. Holt, 39 N. H. 557, 75 Am. Dec. 233.

The learned trial judge cited Green v. Tantum, 19 N. J. Eq. 105, as a case in which this principle was employed and as an authority which

he considered applicable to the facts of this case and binding upon his judgment.. The facts in Green v. Tantum, briefly summarized, are these:

A verdict had been rendered and judgment was about to be entered against Joseph R. Tantum, who, seeking to avoid its payment and intending to defraud the judgment creditor, assigned a number of mortgages to his brother John for actual and adequate considerations. John was not a creditor of Joseph, and therefore did not take the assignments either to secure or to pay a pre-existing debt. He entered the transaction at the time he purchased the mortgages. Although denying knowledge of his brother's intended fraud, the court, nevertheless, found that the assignments were made and the considerations paid under circumstances which imputed fraud to John in coming to the assistance of his brother with an intention to aid him to defraud his creditor.

In Green v. Tantum, as in each of the cases cited in support of the law applied to the facts of this case, it is to be observed that there was a *purpose* by the grantee or transferee, who was not a creditor, *to aid the seller,* who was not his debtor, *in perpetrating a fraud upon a creditor.* The cases relied upon rule this case only if the facts of this case establish that in accepting the transfer of the property, Brown's wife accepted the same not in payment of the debt due her, but with a purpose to aid her husband to defraud English brothers of the debt due them.

The principles of law controlling the transfer and conveyance of property in fraud of creditors are well established. The law will not support a conveyance made by a debtor in failing circumstances in favor of a mere donee, though innocent of intended fraud, nor will the law hold valid a conveyance founded upon actual and full consideration, when it is a part of a scheme to enable the debtor to withdraw his property from the reach of a creditor, under circumstances that charge knowledge to the grantee of the intended fraud. Green v. Tantum, supra. So also the law distinguishes between a mere volunteer who enters a transaction and purchases for a present though adequate consideration, and one who accepts a transfer or takes title under a conveyance to secure or obtain the payment of a pre-existing debt. In the latter case, the law recognizes the right of a debtor in failing circumstances to prefer a bona fide creditor by making to him a valid conveyance in consideration of his debt, and of the right of the creditor, acting honestly and in good faith, to accept the same as security for or in payment of the debt. Huiskamp v. Moline Wagon Co., 121 U. S. 310, 7 Sup. Ct. 899, 30 L. Ed. 971; Atlantic Refining Co. v. Stokes, 77 N. J. Eq. 119, 75 Atl. 445; Id., 78 N. J. Eq. 301, 81 Atl. 1132. The limitations upon these rights, as stated by Leaming, V. C., in Atlantic Refining Co. v. Stokes, supra,

"are to be found in a want of integrity of purpose upon the part of the preferred creditor. There must be no combination between him and his debtor to hinder, delay or defraud other creditors of the debtor. It is not sufficient for the purpose of setting aside such a conveyance that the object of the grantor was fraudulent; it must be shown that the grantee participated in that intent, or had knowledge of the object of the grantee, or of such facts as should

have put him upon inquiry as to the object. * * * And when the conveyance is made to secure an antecedent debt or to discharge such a debt, it has been frequently held that even knowledge upon the part of the grantee that his grantor's purpose is to defeat other creditors will not be operative to vitiate the conveyance, *providing the grantee did not actually participate in that purpose by making a reservation in favor of the grantor, or in some other manner combining with the grantor to enable him to defeat his creditors.* The reasons underlying the distinction between a present consideration and a pre-existing consideration are well expressed in a note to 20 Cyc. 472, as follows:

"'The reasons that have been assigned for the distinction between one who purchases for a present consideration and one who purchased in satisfaction of a pre-existing debt are sound and unassailable. *The former is in every sense a volunteer.* He has nothing at stake—no self-interests to serve. He may, with a perfect safety, keep out of the transaction. Having no motive of interest prompting him to enter it, if yet he does enter it, knowing the fraudulent purpose of the grantor, the law, very properly, says that he enters it for the purpose of aiding that fraudulent purpose. *Not so with him who takes the property in satisfaction of a pre-existing indebtedness. He has an interest to serve. He can keep out of the transaction only at the risk of losing his claim.* The law throws upon him no duty of protecting other creditors. He has the same right to accept a voluntary preference that he has to obtain a preference by superior diligence. He may know the fraudulent purpose of the grantor, but the law sees that he has a purpose of his own to serve, and if he goes no further than is necessary to serve that purpose, the law will not charge him with fraud by reason of such knowledge.'"

This is the law rather than that of Green v. Tantum, supra, which, in our opinion, should be applied to the facts of this branch of the case. In searching the evidence for fraud in this transaction, the difference between the trial court and ourselves is not in findings of fact, but in the inferences to be drawn from the facts and in the law to be applied to them. As we read the evidence, we find that at the time of the third transaction, Brown was indebted to his wife for approximately $20,000, that he was in failing circumstances, and that his wife knew it; that English brothers were pressing Brown for the payment of his debt to them, and that Brown's wife knew this also. We further find that both Brown and his wife knew that he could not discharge his indebtedness both to her and to English brothers, and that payment of the debt to one meant loss of the debt to the other. Brown chose to pay his debt to his wife. In doing this, he exercised his right to prefer her as a creditor to the exclusion of English brothers. Green v. McCrane, supra; Jewell v. Knight, supra. He paid her with stock, and although it took all the stock he had to make the payment, the trial court found, as do we, that the value of the stock was "inadequate to cover his debt to her."

We find nothing in the testimony which indicates that by the third transfer, Brown intended anything other than a payment of the debt to his wife, or that in making the transfer Brown reserved or anticipated any present or future interest in the stock. Brown's act was a bald preference of his wife to English brothers, and although the consequence of the act was to make impossible the payment of his debt to English brothers, the legal effect of the act was not a fraud upon them.

If Brown was guilty of no fraud, then certainly none can be imputed to his wife. But even if Brown intended to defraud English

brothers, his fraudulent intention would not invalidate the transfer of the stock to his wife if it be found that she was a bona fide creditor, that the consideration which she paid was the discharge of an antecedent debt equal to the value of the stock, and that she accepted the stock without intent to aid her husband to defraud English brothers, but with the sole purpose of obtaining payment of the debt due her. While Brown's wife knew that payment to her meant loss to English brothers, that knowledge does not constitute fraud, if, as we find, there was nothing in her conduct or in the circumstances of the transaction from which might be inferred a purpose on her part to help her husband to defraud English brothers or to participate in a scheme to withhold his property from them. Cadogan v. Kennett, supra; Clements v. Moore, supra; Wadsworth v. Williams, supra; Robinson v. Holt, supra; Green v. Tantum, supra.

[2] English brothers can no more complain of the application of Brown's assets to the discharge of his indebtedness to his wife than could Mrs. Brown complain if Brown had transferred his stock to English brothers in discharge of his indebtedness to them, unless, indeed, English brothers have an equitable lien upon the stock.

English brothers contend that their contract with Brown creates in their favor an equitable lien upon the stock in question. We conceive that this contention is urged in anticipation of the view which we have taken of the law to be applied in this case, for it appears that this contention was neither presented nor argued in the court below, and is not specifically raised by the bill of exceptions. It is contended by the complainants, however, that the pleadings and evidence present a case upon which a claim of an equitable lien may be asserted. Whether the contract of January, 1902, gave to English brothers an equitable lien upon Brown's promotion stock, it is certain that the contract gave them a right of action at law for a breach by Brown. English brothers elected to proceed not in equity for the enforcement of such a lien but at law to recover damages for the breach of the contract. Suit on the contract was brought in a law court of the State of New York. Judgment in damages was sought and awarded. The contract was merged in the judgment, and the judgment was for damages. Action on the New York judgment was instituted in a law court of the State of New Jersey and judgment thereupon entered. The present action in equity was brought, as we conceive, not to assert an equitable lien on the stock, but to make possible the enforcement of the New Jersey judgment by bringing the stock, after a decree invalidating its transfer, within reach of execution process. The claim of an equitable lien is without merit.

We are of opinion that the District Court committed no error in holding valid the first and second transfers of stock, and that it erred in holding invalid the third transfer. Therefore we affirm so much of the decree as is brought up by appeal No. 2008, and reverse so much of the decree as is brought up by appeal No. 2007, and direct the District Court to enter a decree in conformity with this opinion.